**STRICKLAND v. SEABOARD COAST LINE R. R., et al.**
No. 69-7446.
Circuit Court, Duval County.
May 5 and 25, 1971.

Norton & Wood, Jacksonville, for plaintiff.

James E. Cobb, Jacksonville, for defendant Southern Pacific Co.

Harold B. Wahl of Loftin & Wahl, Jacksonville, for defendant Norfolk & Western Railway Co.

John S. Cox, Jacksonville, for defendant Seaboard Coast Line R. R. Co.

SAM GOODFRIEND, Circuit Judge.

*Order for summary judgment, May 5, 1971:* This cause coming on to be heard upon the defendant Norfolk & Western Railway Company, a corporation's, motion to quash service and to dismiss plaintiff's complaint (amended), and at said time, the court in addition, heard said defendant's motion for summary judgment filed February 17, 1971; and upon the defendant, Southern Pacific Co., a corporation's, motion to quash service and to dismiss plaintiff's complaint; and upon defendant, Seaboard Coast Line Railroad Company's reasserted motion for summary judgment filed July 21, 1970, the court finds as follows —

As to defendant, Norfolk & Western Railway —

(a) The sheriff's service shows a Mr. C. J. Schrier, as business agent, resident in the state of Florida.

(b) The plaintiff alleged in its amended complaint which was served on Mr. Schrier, that said defendant, among others, was transacting business in the state of Florida through its agent, who resides in Jacksonville, Duval County, Florida.

(c) The said defendant has an office in Jacksonville, however, it does not issue bills of lading, collect freight, sell passenger tickets, settle claims or handle cash transactions, nor does it have bank accounts in Florida, and it has not obtained a certificate of author-

ity to do business in Florida, and does not operate trains or tracks in Florida. The court does not find that the alleged cause of action accrued or arose out of the matters handled by the defendant through its agent in Florida.

(d) That Mr. Schrier is employed and acts for said defendant for solicitation of traffic over defendant's lines of railroad out of the state of Florida for the giving of information with respect to the same; that the defendant has a listing in the telephone directory for its one office in Florida, maintained for the solicitation of traffic outside of Florida, for the giving of information, including tracing information, and the transmitting of same to defendant's principal office in Roanoke, Va., giving of instructions by shippers to issue diversions and re-consignment orders; that none of the defendant's officers reside in Florida other than one member of its board of directors, who resides in Fort Lauderdale, and in recent years has held not more than one meeting of its board of directors annually in the state of Florida. That said defendant did not designate Mr. Schrier as its resident agent to receive service.

In considering the defendant, Southern Pacific Co.'s motion to quash and dismiss plaintiff's complaint, the court finds —

(a) That the sheriff served Mr. William T. Delamate as business agent of the within named defendant, resident in the state of Florida.

(b) Mr. Delamate resides in Florida, maintains an office in his home; that said defendant is a Delaware corporation, and its principal office is in California and had no certificate to transact business in Florida, did not operate any trains and has no tracks in the state of Florida, and no officers or directors who reside in Florida. Mr. Delamate has been in Florida two years, and replaced a similar employee of the defendant, is furnished a desk by the company and corresponds with the Atlanta district of the defendant, his travel expenses are paid by the defendant and his expense account and his personal card has his name and the defendant's name. Mr. Delamate goes to prospective customers and tries to prevail on them that when they route their goods that they are shipping that they route it via Southern Pacific, and Mr. Delamate is paid from the Atlanta office and handles everything east of the Apalachicola River with the defendant's Birmingham agency handling everything west of it. This defendant did not authorize Mr. Delamate as resident agent to receive service.

In considering the matters of law touching upon the motions to dismiss and the motion to quash, filed by the defendants, Norfolk & Western and Southern Pacific, the court considered —

(a) That the plaintiff did not attempt service on said defendants via the secretary of state, pursuant to §48.181, Florida Statutes, but proceeded under §48.081 which provides —

(1) Process against any private corporation, domestic or foreign, may be served:

(a) On the president or vice president, or other head of the corporation; and in his absence:

(b) On the cashier, treasurer, secretary or general manager; and in the absence of all of the above:

(c) On any director; and in the absence of all of the above:

(d) On any officer or business agent residing in the state.

(2) If a foreign corporation has none of the foregoing officers or agents in this state, service may be made on any agent transacting business for it in this state.

(3) As an alternative to all of the foregoing, process may be served on the agent designated by the corporation under §48.091.

(4) This section does not apply to service of process on insurance companies.

(5) Where a corporation has a business office within the state and is actually engaged in the transaction of business therefrom, service upon any officer or business agent, resident in the state, may personally be made, pursuant to this section, and it is not necessary in such case, that the action, suit or proceeding against the corporation shall have arisen out of any transaction or operation connected with or incidental to the business being transacted within the state.

(b) The cases cited by the defendant, Norfolk & Western Railway, in support of its motions were all prior to §48.081, as amended in 1967 (known as the Simari Amendment) amongst which is Beverly v. Norfolk & Western Railway, 16 Fla. Supp. 156, and Graves v. Illinois Central Railroad, 16 Fla. Supp. 161. In said Beverly case and Graves case, the court had facts which are similar to the facts here, and the court held that the scope of the activities of the defendant in the state of Florida did not rise above the "mere solicitation" rule laid down by the Supreme Court of the United States in Green v. Chicago, etc. Railroad Company, 205 U.S. 530, 51 L.Ed. 916, so as to remove it from the protection afforded interstate carriers against suits in jurisdictions where such carriers are not "doing business". In said case, the court stated that it failed to find in the scope of the defendant's activities in Florida those "minimum contacts" which have been held sufficient to convey jurisdiction over a foreign corporation, whose activities in the state of the forum justify the conclusion of law that it is "doing business in the state" within the purview of the rule laid down in International Shoe Company v. Washington, 326 U.S. 320, and like cases.

(c) Said defendant also cited Illinois Central Railroad Company v. Simari, 191 So.2d 427, wherein there was an appeal from a district court of appeal which had held that the service of process (which was served on a district passenger agent in Miami) was sufficient under §47.17 or §47.171 to vest jurisdiction in the trial court. In that case the Supreme Court held that the conclusion reached by the district court was precluded by a precedent not cited or referred to in the district court's opinion, but relied upon by the petitioner. This precedent was Zerin v. Charles Pfizer & Co., Fla. 1961, 128 So.2d 594. The *Zerin* case dealt with §47.171, and the Supreme Court in the *Simari* case stated —

". . . The district court should never have reached the question whether the petitioner in said case was doing business in the state, since it is apparent that the cause of action did not arise out of anything that the petitioner allegedly did in Florida."

(d) Subsequent to the *Simari* case §48.081 (the Simari Amendment) was passed to eliminate the connexity requirement where foreign corporations maintain an office in the state and transact business from it.

(e) Tracing the court's application to such service statutes, the court found in Donnelly v. Kellogg Co. 293 F. Supp. 53, U. S. District Court, S.D. of Florida (1968), that the district court held that the very language of §48.181, (being the statute for service of non-residents engaging in business in the state, formerly known as §47.16) shows that a cause of action must arise out of or be incidental to the corporation's activities within the state. Therefore, if substituted service on the secretary of state is to be valid to bind a company, the cause of action must have arisen out of the business transacted in Florida. The statutory requirement that the cause of action arise out of or be incidental to the foreign corporation's Florida activities has recently been reformed in the *Zerin* and *Simari* cases, supra.

(f) However, in 1968 in Woodham v. Northwestern Steel and Wire Company, 390 F. 2d 27, wherein a Mr. Woodham brought a personal injury action against four corporation defendants, alleging that the proximate cause of the injuries he received when a reel of reinforcing wire mesh fell on him while he was unloading the wire from the railroad box car in which it had been shipped from Illinois to Florida, was the negligence of some or all of the defendants in loading and handling the wire, and the case was removed to the district court on the grounds of diversity of citizenship and requested jurisdictional amount, two of the defendants were dismissed from the case, after a hearing on the respective motions (one to vacate

service and the other to dismiss) on the ground that the court lacked jurisdiction over the persons.

(g) In the *Woodham* case the two railroad companies dismissed had urged that the court had no valid jurisdiction over the defendants because they were not doing business in the state of Florida and because the cause of action was not grounded on activities within the state. In that case the facts were as follows —

(1) They are foreign corporations which have not qualified to do business in Florida.

(2) Both manage office operations in the state, owned office furniture and paid state taxes on the furniture.

(3) Both maintained resident business agents who have worked in Florida for about 15 years, and clerical personnel who actively solicit passenger and/or freight business in Florida for their respective employers.

(4) Each corporation has telephone listings in the state in its own name.

(5) The business agents for each company successfully generate a large volume of business for their respective railroads.

(6) The court found it had no difficulty in finding that these contacts are a substantial and permanent nature of sufficiency to meet the minimum contact test of due process under the 14th amendment.

The court in the *Woodham* case held as follows —

(i) Under Florida law, purpose of process is to advise party of nature of action brought against him.

(ii) Under Florida law, test used to determine if service upon agent is sufficient to constitute service upon corporation is whether corporation will receive notice of action.

(iii) An agent conducting sporadic business in Florida for foreign corporation, or a transitory or nonresident agent irregularly doing business in the state is within purview of statutes providing for substituted service and for service upon nonresident agents which require that cause of action must arise out of corporate activity in Florida to support service upon foreign corporation.

(iv) Where a business agent of a foreign corporation actually resides in Florida and engages in sustained, continuous business for his employer, the foreign corporation may be sued by service on the resident agent, regardless of where the cause of action arose.

§48.081 amongst other matters contains the following —

(1d) On any officer or business agent residing in the state . . . [formerly 47.17(4) which stated "upon any officer or business agent, resident in the state."] * * *

(3) As an alternative to all of the foregoing, process may be served on the agent designated by the corporation under §48.091 [which provides

for qualified or hereafter qualified corporations in the state of Florida to designate a resident agent.] * * *

(5) Where a corporation has a business office within the state and is actually engaged in the transaction of business therefrom, service upon any officer or business agent, resident in the state, may personally be made pursuant to this section, and it is not necessary in such cases that the action sued or proceeding against the corporation shall have arisen out of any transaction or operation connected with, or incidental to the business being transacted within the state.

In 190, So. Reporter, 2d series, Bradbery v. Frank A. Savage, the court stated that the terms "agent transacting business for it in the state" (§48.17(5)) which is the same as "(2)" of §48.081, "business agent, resident in the state" (which was §47.17(4) and similar to (1)(d) of §48.081) and "a resident agent in the state" (which was formerly §47.16(1)) are entirely different.

In the case at bar, the court finds that the defendants Norfolk & Western Railway and Southern Pacific Co. had offices in the state of Florida, business agents who resided in the state of Florida who conducted continuous business for said defendants respectively, and that service of process on such agents for their respective defendants was valid service of process and did not require that the cause of action accrue out of business they transacted, respectively.

Considering the defendant, Norfolk & Western Railway's motion for summary judgment and the exhibits and matters submitted therewith, and the defendant, Seaboard Coast Line Railroad Company's motion for summary judgment and reasserted motion therefor, the court finds that the question before this court is whether there is a genuine issue as to any material fact, when considered in a light most favorable to the party being moved against, and the court finding that the plaintiff does not contravene the facts that Norfolk & Western Railway was a connecting carrier and that Seaboard Coast Line Railroad Company was a delivering carrier, that the car was sealed, that inspections were made, and that there was no evidence of any defect from the exterior inspections of said sealed cars — and that said defendants did not fail in their duties in that no outside inspection of the loaded, sealed cars revealed any indication of any of the alleged defects complained of by the plaintiff. The court further finds that the defect complained of was contained wholly within the interior of the car, that said defendants conducted reasonable inspections of the box car, and owed no duty to give any type of warnings, to make any type of repairs or to break the seal. The court further finds on the affidavits and exhibits that the consignee opened the seal, and that said defendants as a matter of law were not negligent. Smith v. Louisville & Nash-

ville Railroad Company, 267 F. Supp. 716; Blytheville Wire Company v. Kurn, 155 F. 2d 467; Copeland v. Chicago B & G Railroad Co. 293 F. 12. The motions for summary judgment of the defendants Norfolk & Western Railway and Seaboard Coast Line Railroad Company will be granted.

In considering the aforesaid, and the court being fully advised in the premises, it is ordered and adjudged —

The Norfolk & Western Railway's motion to quash and dismiss the plaintiff's complaint is denied.

The motion for summary judgment of the defendant, Norfolk & Western Railway, is granted.

The motion of Southern Pacific Co. to quash and dismiss the plaintiff's complaint is denied.

The motion for summary judgment and re-assertion of same of defendant, Seaboard Coast Line Railroad Company, is granted.

*Order denying motion for rehearing, May 25, 1971:* This cause coming on to be heard after due notice and argument of counsel, on plaintiff's motion for rehearing on order for summary judgment and summary judgment in favor of defendants, Seaboard Coast Line Railroad Company and Norfolk & Western Railway, upon consideration, it is ordered as follows —

The court gave careful consideration to ACL R.Co. v. Gary (Fla. 1951), 57 So.2d 10. That case is not in point here for (a) there an employee of the delivering railroad ACL was present when the car was opened and he inspected the inside of the car and contents, and (b) the case of Ladd v. N.Y. etc. R. Co., 193 Mass. 359, 79 N. E. 742, there cited, was one where the carrier had notice of the defect.

Here, neither the Seaboard Coast Line nor the Norfolk & Western had any notice of the defect or any opportunity to inspect the inside of the car. As stated in the court's order of May 5, 1971, these railroads made an outside inspection, they could not make an inside inspection as the car was sealed when they reecived it, and the defect was contained wholly on the inside of the car with no external evidence of defect. The consignee, through plaintiff, opened the car, and plaintiff himself broke the car seal when defendant railroads were not present.

There was no duty on the part of the Norfolk & Western and Seaboard Coast Line to break the seal on a sealed car and make an internal inspection when a good outside inspection shows no defects. Kansas R. Co. v. Pysher (Tex. 1917), 195 S.W. 981, 983.

Butler v. C. of G. R. Co. Ga. (1953), 74 S. E. 2d 395, 397. Avery v. N. & W. #70-16 U.S.D.C., N. D. Ohio - 1-20-71 and cases cited.

Plaintiff's counsel expressly stipulated before the court that no external inspection would have disclosed the defect.

The motion for rehearing is accordingly denied.